**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KENTES WEST,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LANCE T. KORANDO, ERIN NICHOLSON, ALISA DEARMOND, JILL CRANE, MIKE MOLDENHAUER, SGT. METHENY, SGT. HARRIS, LT. HUGHEY, DR. COMPARIN, WAYNE, CONNIE DOLCE, and ANTHONY WILLS,**<br><br>**Defendants.** | **Case No. 26-cv-651-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Kentes West, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, West alleges that Defendants were deliberately indifferent to his medical needs and conditions of confinement.

The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief

may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

West alleges that he needed a shot for his shoulder pain and waited over a year for treatment, despite seeing his cellmate obtain treatment for his condition relatively quickly (Doc. 1, p. 9). Unfortunately, West fails to indicate the nature of his shoulder injury or allege how quickly his cellmate obtained care—or even the nature of his cellmate's condition. In April 2024, West decided to seek a placement on crisis watch in order to speak with mental health providers and obtain care for his shoulder through the mental health providers (*Id*.). He also sought the renewal of a permit, but he does not indicate the nature of the permit.

While on crisis watch, Correctional Officer Lance Korando denied West access to a mattress; he was forced to sleep on the metal bunk (Doc. 1, p. 9). Korando informed West that if he wanted a mattress he should come off watch (*Id*.). After a week, West sought to come off watch because he had been sleeping on the filthy cell floor (*Id*.). But the mental health providers would not let him off watch in order to teach him a lesson about using crisis watch to manipulate staff (*Id*.).

On May 7, 2024, mental health provider Nicholson and Korando approached his cell. West asked to come off crisis watch and go back to his cell, but Nicholson declined his request, noting that he could not use crisis watch to try to get what he wanted (*Id*. at pp. 9-10). West told Nicholson that Korando refused his request for a mattress, but Nicholson refuted the claim, stating that Korando offered him a mattress but West

refused it because Korando is gay (*Id*. at p. 10). West argued that the comment was not true. After Nicholson walked away, West punched the glass window, breaking his hand (*Id*.).

Immediately after the incident, West saw Nurse Practitioner Moldenhauer (Doc. 1, p. 10). He also informed Moldenhauer about his shoulder pain. An x-ray confirmed the broken hand, and West was sent to an outside hospital for a cast (*Id*.). While in the healthcare unit, he asked Sergeant Metheny if he could receive a mattress upon his return (*Id*.). Metheny noted that he would talk to Korando, who responded that he was not going to give West a mattress even if he got written up for an infraction. Instead of correcting Korando, Metheny merely stated, "well there [is] your answer to that." (*Id*.).

But West was not placed back in his cell upon his return from the hospital. Instead, he was placed in the healthcare unit because of his cast (Doc. 1, p. 10). Nurse Practitioners Dearmond and Crane told him that they could only prescribe him ibuprofen and Tylenol, which did nothing to ease his pain (*Id*. at pp. 10-11). Dearmond indicated that it served him right for punching a wall (*Id*. at p. 11). West remained in the healthcare unit awaiting surgery for his hand. He alleges that he learned at some point that Dearmond and Crane were going to deny his surgery because West had a complaint against Dearmond (*Id*.). He learned from Nurse Williams that he was not awaiting surgery but merely being housed in the healthcare unit due to the risks posed by having a cast on his hand (*Id*.).

West later spoke to Dr. Comparin about his shoulder pain and the shot West believed he needed for his shoulder (Doc. 1, p. 11). Dr. Comparin reviewed his medical records and determined that West needed surgery for his hand. Dr. Comparin indicated

he would write a referral for surgery and prescribed him medication. Although West does not indicate the name of the medication, he alleges that the medication helped the pain in both his hand and shoulder (*Id*.).

At some later point, Lieutenant Hughey and Sergeant Harris spoke to West and warned him to stop talking to Dr. Comparin because the doctor did not know what he was doing (Doc.1, p. 11). They indicated that Dearmond and Crane would provide him with proper care. Nurse Practitioner Moldenhauer later agreed with the officers' assessment but continued to prescribe West pain medication (*Id*.). West spoke with Dr. Comparin who assured West that he was scheduled for surgery (*Id*.). But West was eventually moved from the healthcare unit, the surgery referral was denied, and he was ordered physical therapy (*Id*.). West alleges that Dolce fabricated paperwork to make it look like West was still seeing Dr. Comparin, Anthony Wills failed to obtain medical care for West, and Physical Therapist Wayne failed to schedule physical therapy (*Id*.). As a result, West contends that his hand is now deformed.

**Preliminary Dismissals**

West lists Dr. Comparin and Nurse Practitioner Moldenhauer as defendants in the case caption, but none of the allegations regarding the care provided by Comparin and Moldenhauer rise to the level of deliberate indifference. To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendants' actions were more than

negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant had knowledge of his condition and was personally involved in his care. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). But the allegations regarding Dr. Comparin and Nurse Practitioner Moldenhauer actually suggest that both providers provided him with care. Moldenhauer examined his initial injury, ordered x-rays, and sent West for outside care. He also continued the stronger pain medication ordered by Dr. Comparin. Similarly, Dr. Comparin examined West, ordered medications, and referred West for surgery. Nothing in the pleading suggests that either provider acted with deliberate indifference.

To the extent West identifies Anthony Wills as a defendant, he also fails to state a claim. Wills cannot be liable simply in his position as warden because there is no *respondeat superior* (or supervisory) liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). Further, West merely alleges that Wills "failed to get me the care I needed" without providing any factual allegations regarding Wills's personal involvement in West's care. There are no allegations to suggest that West even spoke to Wills about his medical care.

Similarly, West only alleges in conclusory fashion that Wayne and Dolce failed to provide him with care. He merely alleges that Dolce fabricated paperwork without offering any allegations suggesting the nature of this paperwork, the timeframe when

this fabrication took place, and the impact on West's ability to obtain care. West also fails to allege when Wayne refused to schedule his physical therapy; nor has he alleged that Wayne was even aware of the order for physical therapy. Without more, his allegations simply do not suggest deliberate indifference on the part of these defendants.

West also fails to state a claim against Lieutenant Hughey and Sergeant Harris. He merely alleges that the officers told West that Dr. Comparin did not know what he was doing and that Dearmond and Crane would provide better care. But there are no allegations to suggest that either officer was involved in West's medical care and their verbal statements, on their own, do not suggest deliberate indifference.

Finally, West appears to bring a claim for deliberate indifference to his conditions of confinement against Nicholson, Korando, and Sergeant Metheny for denying West access to a mattress while on crisis watch. There are no allegations to suggest that West needed to mattress for medical reasons or that the lack of a mattress amounted to "the denial of the minimal civilized measures of life's necessities" such as is required to state a viable Eighth Amendment claim. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The lack of a mattress may have made West uncomfortable but there are no allegations to suggest that it was inhumane. *Id*. It is also not clear from the allegations how long that West went without a mattress. He alleges that he went on crisis watch in late April and requested to leave crisis watch on May 7, 2024, suggesting that he was only in the cell and without a mattress for a few days up to a week. He also notes that the cell was "filthy" but fails to provide any further allegations

regarding the condition of his cell. Thus, any claim regarding his conditions of confinement is also dismissed for failure to state a claim.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Alisa Dearmond and Jill Crane for denying West stronger pain medication for his broken hand and denying his referral for surgical care.**

**Count 2:** **First Amendment retaliation claim against Alisa Dearmond and Jill Crane for denying West medical care in light of his complaints against Dearmond.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

**Count 1**

At this stage, West states a viable claim for deliberate indifference against Alisa Dearmond and Jill Crane. He alleges that both providers sought to keep him from Dr. Comparin and overruled his decision regarding surgical correction of West's broken hand. He also alleges that they refused to provide him with stronger medications, initially

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

telling West that he could only receive ibuprofen or Tylenol. At this stage, West states a viable claim against Dearmond and Crane.

**Count 2**

In order to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, West fails to offer enough facts to state a viable retaliation claim against Dearmond and Crane. West alleges that he "found out" that the providers were not going to allow him surgery because of a complaint against Dearmond, but he provides scant details about this complaint. West fails to allege the nature of this complaint or when he filed the complaint against Dearmond. He does not even allege how he "found out" about the providers' intentions. Nothing in the complaint suggests that he was denied care because of a previous complaint. Thus, Count 2 is **DISMISSED without prejudice**.

Finally, West's Complaint indicates that he also seeks injunctive relief and a requested injunction (Doc. 1, p. 1). His request for relief asks for surgery to correct his hand (*Id*. at p. 12). But West has not filed a separate motion seeking injunctive relief nor does his Complaint demonstrate that he is entitled to preliminary injunctive relief

pursuant to Federal Rule of Civil Procedure 65(a). To the extent he seeks a preliminary injunction, West would need to file a motion demonstrating that he is entitled to such relief.

## Motion for Counsel

West has also filed a motion for counsel (Doc. 3) although he only included the second page of the Court's standard form motion for recruitment of counsel. West's motion does not indicate whether he has tried to obtain counsel on his own, nor is there any indication that he needs counsel at this time. He indicates that he lacks access to his legal property but there is nothing currently pending that would require him to access such property. Further, his pleading was well written and easy to understand. Thus, his request for counsel is **DENIED** at this time.

## Disposition

For the reasons stated above, Count 1 shall proceed against Alisa Dearmond and Jill Crane. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Alisa Dearmond and Jill Crane: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by West. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the

Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by West, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because West's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against West, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, West is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 15, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**